UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JENNIFER A. MAYENSCHEIN,

                Plaintiff,

      v.                                Case No. 15-C-858

WS PACKAGING GROUP INC.,

                Defendant.

---

## DECISION AND ORDER

---

Plaintiff Jennifer Mayenschein filed suit against her former employer, WS Packaging Group Inc. (WSPG), asserting claims for age discrimination and retaliation in violation of the Age Discrimination in Employment Act (ADEA). Arising under federal law, her claims provide this court with jurisdiction under 28 U.S.C. § 1331. Mayenschein was born on December 2, 1967 and was over forty at the time of her termination. The case is now before the court on WSPG's motion for summary judgment. For the reasons below, WSPG's motion will be granted.

## BACKGROUND

WSPG produces high-quality label and packaging products in seventeen printing and packaging facilities throughout the United States. (Stipulated Material Facts (SMF) ¶ 1, ECF No. 38.) On May 1, 2011, Steve Bishara, WSPG's Chief Human Resources Officer/Chief Administrative Officer, hired Mayenschein, then age 43, as its Corporate Director of Human Resources in Green Bay, Wisconsin. (*Id.* ¶¶ 2–3.) As a Corporate Director of Human Resources, Mayenschein provided support to the company's leaders as well as certain members of the Human Resources team and oversaw twenty-eight employees. (*Id.* ¶ 4; Pl.'s Proposed Findings of Fact (PPFOF) ¶ 1, ECF No.

45.) Her role did not require substantial day-to-day operational responsibility or involvement with WSPG's printing and packaging facilities. (Def.'s Proposed Findings of Fact (DPFOF) ¶ 5, ECF No. 39.) She earned a starting salary of $121,082 per year, received a $20,000 sign-on bonus, and accepted $45,500 in relocation assistance. (SMF ¶¶ 6–7; PPFOF ¶ 2.) At the time her employment ended, Mayenschein earned $129,000 per year. (SMF ¶ 9.)

In October 2013, WSPG's Chief Executive Officer, Rex Lane, instructed Bishara to reduce the Human Resources Department's salary expenditures by as close to $150,000 as possible over the ensuing 13.5 months, while also creating the least possible impact and disruption to WSPG's workforce. (*Id.* ¶ 19; DPFOF ¶ 10.) The reduction was part of a general cost-cutting measure Lane had instituted throughout the company. Bishara told Mayenshein and Kathryn McBride, WSPG's other Corporate Director of Human Resources, that he was required to cut $150,000 from the Human Resources budget and would be the sole decisionmaker. (SMF ¶¶ 21–22; PPFOF ¶ 8.)

WSPG contends that Bishara created a spreadsheet to analyze numerous scenarios for the impending reduction in force (RIF). (DPFOF ¶ 12.) The spreadsheet listed each employee targeted for a potential layoff and his or her respective salary. (*Id.* ¶ 13.) Bishara created four hypothetical scenarios identifying the employees involved and the amount of the potential salary reduction. (*Id.* ¶ 14.) He recognized that he would likely absorb the laid-off employees' job duties and was mindful of the tasks that would align with his own schedule and responsibilities. (*Id.* ¶ 16.) Three out of the four scenarios in the spreadsheet required Bishara to eliminate more than one employee and eliminate at least one non-corporate employee to meet Lane's directive. (*Id.* ¶¶ 17–18.) The fourth scenario required Bishara to layoff only Mayenschein, the second highest paid employee after Bishara and a corporate employee. (SMP ¶ 18.)

2

WSPG claims that, after reviewing the options, Bishara decided to eliminate Mayenschein's position. (DPFOF ¶ 19.) He determined eliminating her position would result in a reduction of $145,226 in salary expenditures over the next 13.5 months and would be the least disruptive to WSPG's operations as a whole. (*Id.* ¶ 25.) Bishara determined he could more easily absorb Mayenschein's job duties as opposed to any other employees', and he would not be required to remove any non-corporate human resources employees. (*Id.* ¶¶ 22–24.)

On November 6, 2013, Bishara informed Mayenschein that he elected to eliminate her position as a cost-cutting measure. (*Id.* ¶ 26; SMF ¶ 23.) Bishara explained that eliminating her position would have the least impact on the Human Resources Department and resulted in the highest financial savings. (SMF ¶ 25.) In response, Mayenschein argued that she should be retained because she was more qualified, better educated, and more experienced than McBride, the other Corporate Director. (*Id.* ¶ 26.) At the time, McBride was 32 years old. (*Id.* ¶ 13.)

The next day, November 7, 2013, Mayenschein provided Bishara with a memorandum reiterating why she should be retained in lieu of McBride. (*Id.* ¶¶ 27–28.) She also requested twelve months' severance pay. (*Id.* ¶ 28.) Bishara indicated that his decision to eliminate her position was final and that WSPG would create a severance package for her. (*Id.* ¶ 29.) Mayenschein contends that in this meeting, she told Bishara that she thought his decision to eliminate her position was age discrimination and that Bishara did not respond to her age comment. (PPFOF ¶ 27.)

On November 8, 2013, Mayenschein offered to reduce her salary to $104,026, which was $988 lower than McBride's salary. (SMF ¶ 30.) Bishara again responded that the decision to eliminate her position was final. (*Id.* ¶ 31.) WSPG contends that Bishara declined her offer because reducing her salary by nearly 20% would have an adverse effect on her morale and overall job

3

satisfaction and he would still be required to layoff another individual. (DPFOF ¶¶ 31–33.) He told her that she was welcome to remain employed at WSPG while it finalized the terms of her severance package. (SMF ¶ 32.) Mayenschein stated that because he was not willing to allow her to reduce her salary and she was unable remain employed at WSPG, she would immediately relinquish her duties. (*Id.* ¶ 33.) Mayenschein's last day of employment with WSPG was November 8, 2013. (*Id.* ¶ 36.) She was 45 years old. WSPG claims that at no point before Mayenschein relinquished her job duties did she ever complain that the elimination of her position had anything to do with her age. (DPFOF ¶ 38.)

Mayenschein filed a discrimination complaint with the Equal Rights Division (ERD) on January 16, 2014. (SMF ¶ 37.) The ERD conducted an initial investigation of her claims and issued a determination of no probable cause. (Def.'s Appx. Ex. G, ECF No. 40.) The EEOC issued a right to sue letter on May 1, 2015. (SMF ¶ 41.) Mayenschein filed this lawsuit alleging age discrimination and retaliation in violation of the ADEA on July 15, 2015. (*Id.*)

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails

4

to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

### A. ADEA Claim

The ADEA prohibits an employer from discharging an individual because of her age. 29 U.S.C. § 623(a)(1). To establish a claim under the ADEA, a plaintiff must show that "the protected trait (under the ADEA, age) actually motivated the employer's decision—that is, the employee's protected trait must have 'actually played a role in [the employer's decisionmaking process] and had a determinative influence on the outcome.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).

The Seventh Circuit recently clarified the legal standard to be applied when considering a summary judgment motion on a claim of intentional discrimination. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). The court rejected the distinction between the direct and indirect methods of proof and concluded that "all evidence . . . must be evaluated as a whole." *Id.* at 766. Under this new standard, plaintiffs may submit direct or circumstantial evidence of intentional discrimination or proceed under the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* Though *Ortiz* was a Title VII case, the opinion did not alter the principle that ADEA claims and Title VII claims should be analyzed under the same framework. *See Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 n.3 (7th Cir. 2009) ("We apply the same analytical framework to employment discrimination cases whether they are brought under the ADEA or Title VII."). Accordingly, Mayenschein may defeat summary judgment by

5

presenting evidence that, considered as a whole, would allow a reasonable juror to conclude that she was discriminated against due to a protected characteristic that caused an adverse employment action. *Ortiz*, 834 F.3d at 765.

Mayenschein argues that she presented adequate evidence of age discrimination to withstand summary judgment. Because she does not contend that there is any direct or circumstantial evidence of discrimination, she must establish a *prima facie* case of age-based discrimination. *See McDonnell Douglas*, 411 U.S. at 802. Mayenschein must show that (1) she was over 40 years old; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) WSPG treated similarly situated employees outside her protected class differently. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). In a "mini-RIF" case like this one, where an employee is terminated and remaining employees absorb her job duties, the plaintiff need not prove the fourth prong of the traditional *prima facie* case. Instead, Mayenschein must show her duties were absorbed by employees outside the protected class. *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 876 (7th Cir. 2002); *see also Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 690 (7th Cir. 2006).

Once the plaintiff establishes a *prima facie* case, she creates a rebuttable presumption of discrimination, and the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for its action." *Coleman*, 667 F.3d at 845 (citing *McDonnell Douglas*, 441 U.S. at 802). When the employer does so, the burden shifts back to the plaintiff who must present evidence that the employer's stated reason is "pretext." *Id.* (citing *McDonnell Douglas*, 441 U.S. at 804). "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Testerman v. EDS Tech. Prods. Corp.*, 98 F.3d 297, 303 (7th Cir. 1996) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

6

## 1. Adverse employment action

WSPG first argues Mayenschein cannot establish a *prima facie* case of age discrimination because she did not suffer an adverse employment action. The parties stipulated that Bishara notified Mayenschein on November 6, 2013, that her position was to be eliminated. (SMF ¶ 23.) The following day, Mayenschein presented Bishara with a memorandum she drafted setting forth the reasons why she thought she should be retained instead of McBride. At the same time, Mayenschein requested a severance package consisting of one year's salary. (*Id.* ¶ 28.) Bishara told Mayenschein the decision had been made and was final, but added that the Company would be putting a severance package together for her. On November 8, 2013, when Bishara rejected Mayenschein's offer to reduce her salary, he again told her that the Company was in the process of putting together a severance package for her and that she could continue her employment while the details were worked out. Mayenschein responded that if her offer to reduce her salary was not accepted, then she would be relinquishing her duties effective immediately. (Id. ¶¶ 31–33.) Because Mayenschein effectively resigned from her position before it was eliminated, WSPG argues that her claim necessarily fails. In essence, WSPG argues that Mayenschein quit before the Company took any adverse employment action against her.

WSPG's argument relies on *Whittaker v. Northern Illinois University*. 424 F.3d 640 (7th Cir. 2005). There, a former employee of the University sued for sex discrimination, retaliation and a hostile work environment after she was given a three-day suspension for absenteeism. The Court affirmed the district court's grant of summary judgment on the hostile work environment claim, however, and concluded that because she left her employment before the leave of absence was scheduled to take effect, she suffered no adverse employment action: "As Whittaker cannot establish

7

that she was subject to an adverse employment action, she has failed to make her claims of disparate treatment and retaliation." *Id.* at 649. WSPG argues the same reasoning applies here.

Mayenschein's one-paragraph response to WSPG's argument offers little. (Br. in Opp. at 5.) She makes no effort to distinguish *Whittaker*. She seems to argue that she was entitled to resign immediately because she had already been told the decision to eliminate her position was final. Being told one's position is to be eliminated is not the same as being terminated, however. CEO Lane's October 13, 2013 instructions to Bishara was to reduce his payroll by $150,000 over the ensuing 13.5 months, not immediately. Whether the decision was final or not, by resigning, Mayenschein eliminated the need for WSPG to take any further action. She thereby prevented them from taking an adverse action against her and at the same time eliminated her claim for age discrimination. Her claim is not saved by her unilateral effort to withdraw her stipulation of fact, particularly since it is unaccompanied by any citation to evidence to the contrary.

**2. Evidence of discrimination**

Even absent her resignation, Mayenshein's claim that WSPG discriminated against her on account of her age would fail. She has failed to offer any evidence from which a jury could conclude that WSPG's non-discriminatory reason for the decision to eliminate her position was pretext. WSPG contends that cost-cutting measures within the Human Resources Department required the elimination of her position. (DPFOF ¶ 26.) Bishara believed that eliminating her position would reduce salary expenditures by nearly $150,000 and would be less disruptive to WSPG's operations. (*Id.* ¶ 25.)

To show pretext, Mayenschein must "squarely rebut" each specific reason articulated by WSPG. *See Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 349 (7th Cir. 1997). In determining

8

whether the employer's articulated reasons for an employment action are pretextual, the inquiry should focus on whether the decisionmaker honestly believed that terminating the plaintiff was the appropriate decision at the time it was made. *Merillat*, 470 F.3d at 693. The employer's justification need not be a "good reason," but merely an age-neutral one. *Warren v. Solo Cup Co.*, 516 F.3d 627, 630 (7th Cir. 2008) (citations omitted). The Seventh Circuit has held that even if a plaintiff's performance was satisfactory, it does not mean her termination as part of a RIF was discriminatory. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 323 (7th Cir. 2003).

In light of the legitimate, non-discriminatory reasons articulated by WSPG, Mayenschein was required to present evidence sufficient to call the truthfulness of WSPG's stated reasons into question and to show Bishara did not honestly believe the reasons or rely on them in eliminating her position. In the age discrimination context, it is not enough for Mayenschein to show that her age was a motivating factor in Bishara's decision; she must demonstrate that "but for" her age, WSPG would not have eliminated her position. *Martino v. MCI*, 574 F.3d 447, 455 (7th Cir. 2009). Mayenschein fails to create any dispute that Bishara truthfully and honestly believed Mayenschein's position should be eliminated based on the factors he relied upon: (1) a reduction of $145,226 in salary expenditures, not including benefits and bonuses, over the ensuing 13.5 months; (2) this reduction was within Lane's directive to reduce expenditures as close to $150,000 as possible; and (3) it would have the least impact and disruption to WSPG's workforce and operations as a whole. (DPFOF ¶ 25.) In short, Bishara believed eliminating Mayenschein's position "would have the least impact on the Human Resources Department while resulting in the highest financial savings." (SMF ¶ 25.)

Mayenschein identifies a number of factors she claims support her conclusion that WSPG's reasons are pretextual. Specifically, Mayenschein claims she should not have been terminated

because (1) she offered to reduce her salary to McBride's level; (2) she was more qualified than McBride; (3) her alleged performance concerns do not justify the elimination of her position; and (4) WSPG generally discriminates against older employees. These facts, however, do not in any way indicate Bishara did not honestly believe eliminating Mayenschein's position would result in the highest financial savings as well as be the least disruptive to the Human Resources Department.

Mayenschein primarily argues Bishara's reasons are pretextual because he rejected her offer to take a 20% pay cut. She claims that she offered to reduce her salary to $104,026, which was $988 lower than McBride's salary. (SMF ¶ 30.) If WSPG allowed her to reduce her salary as requested and laid off McBride, she argues, this scenario would have had the greatest cost savings. But Mayenschein admits that Bishara was not only concerned about the monetary impact of his decision; he was also concerned with achieving the requisite salary expenditure reduction that had the least possible impact and disruption on WSPG's workforce and operations as a whole. (Pl.'s Resp. to DPFOF ¶¶ 9–10, ECF No. 45.) Bishara told Mayenschein he decided to eliminate her position because it was best for the team. (PPFOF ¶ 12.) Plaintiff admits that her position did not require the same level of nuanced day-to-day contact with WSPG's printing and packaging facilities as McBride's role did and that eliminating her position made the most sense from a practical restructuring standpoint because Bishara could more easily absorb her job duties. (Pl.'s Resp. to DPFOF ¶¶ 21–22.) Mayenschein does not dispute that these are non-discriminatory, legitimate business reasons or that Bishara did not believe or rely on them in eliminating her position.

Moreover, it is not the court's "role to question the wisdom of a company's decision on how to run its business, only to assure that such decisions are not intended to provide cover for illegal discrimination." *Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946–47 (7th Cir. 2006); *see also*

10

*Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 754 n.8 (7th Cir. 2006) (noting plaintiff failed to raise a genuine issue of fact merely by challenging the judgment of supervisors); *Holmes v. Potter*, 384 F.3d 356, 361–62 (7th Cir. 2004) ("[W]e do not sit around as a super-personnel department that reexamines an entity's business decisions and reviews the propriety of that decision."). A plaintiff's subjective beliefs are "insufficient to create a genuine issue of material fact." *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 574 (7th Cir. 1998). In sum, Mayenschein has not offered any evidence to rebut what WSPG has held out has its legitimate business judgments.

Mayenschein also argues she was more successful and more qualified than McBride, the younger employee retained by WSPG. She asserts she has nineteen years of human resources experience, a Master's degree, and a Senior Professional Human Resources Certification. (PPFOF ¶¶ 21, 25.) However, Mayenschein's "own opinions about her own work performance or qualifications do not sufficiently cast doubt on the legitimacy of her employer's proffered reasons for its employment actions." *Ost v. W. Suburban Travelers Limousine Inc.*, 88 F.3d 435, 441 (7th Cir. 1996). Mayenschein further claims she was never notified of concerns with her performance. But, in a RIF, "someone has to go," *Fairchild*, 147 F.3d at 573, and an individual whose performance could be "characterized as satisfactory or adequate" may lawfully be terminated. *Merillat*, 470 F.3d at 694. In short, Mayenschein's attempts to demonstrate pretext in this regard are unavailing.

Finally, Mayenschein contends that WSPG discriminated against older employees through other RIFs. She claims that WSPG decided to conduct a RIF in 2013, and she noticed that "70% of those selected for the RIF were over age 40." (Pl.'s Resp. Br. at 11.) She asserts that WSPG's assessment tools included employees' ages. Mere knowledge of an employee's age, however, does not "generate an inference that an adverse employment decision was the result of age-based bias."

11

*Sprague v. Navistar Intern. Transp. Corp.*, 838 F. Supp. 1268, 1278 (N.D. Ill. 1993) (citing *Gustovich v. AT&T Comms., Inc.*, 972 F.2d 845, 849 (7th Cir. 1992)).  Mayenschein's conclusory allegation that WSPG intentionally discriminated against older individuals lacks any evidentiary support.  Such speculation is insufficient to defeat summary judgment.  *See Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012) ("[O]ur favor toward the nonmoving party does not extend to drawing inferences that are supported by speculation or conjecture.").  Accordingly, Mayenschein's final assertion does not demonstrate pretext.

Given the undisputed facts in the record, no rational jury could find that WSPG's reasons are a pretext for age discrimination.  The court finds that Mayenschein has failed to create a genuine issue of material fact as to her age discrimination claim.  Therefore, WSPG is entitled to summary judgment as to this claim.

## B. Retaliation Claim

Mayenschein also claims WSPG retaliated against her after she expressed her opposition to what she perceived as age discrimination.  Like her ADEA claim, her retaliation claim is barred by her voluntary resignation which preceded any adverse employment action WSPG intended to take.  But also as with her ADEA claim, Mayenschein's retaliation claim would fail in any event for lack of evidence.  To prove a claim for ADEA retaliation, Mayenschein must demonstrate that she engaged in protected activity under the ADEA, that she suffered a materially adverse action, and that the two are causally related.  *Barton v. Zimmer, Inc.*, 662 F.3d 448, 455 (7th Cir. 2011) (citation omitted).  Under the ADEA, "retaliation must be a but-for cause of a materially adverse action, not merely a contributing factor."  *Id.* (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009); *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 961 (7th Cir. 2010)).

Mayenschein asserts that she engaged in protected activity on November 7, 2013, the day after Bishara notified her that her position was eliminated. (PPFOF ¶ 27.) In her declaration, Mayenschein claims that in a meeting on November 7, 2013, she told Bishara that she thought his decision to eliminate her position rather than McBride's was age discrimination. (Mayenschein Decl. ¶ 25, ECF No. 46.) She contends that Bishara never responded to this allegation. (*Id.*) WSPG argues that Mayenschein's declaration is a "sham" because it contradicts her earlier deposition testimony. (Def.'s Reply Br. at 4, ECF No. 49.)

In her deposition, Mayenschein gave a detailed description of the conversation she had with Bishara during the November 7, 2013 meeting. (Mayenschein Dep., ECF No. 48-1.) Yet, she did not testify that she told Bishara that she felt like her age was the reason he decided to terminate her. (*Id.*) A party cannot create an issue of fact by submitting an affidavit whose conclusions contradict prior sworn testimony. *Buckner v. Sam's Club, Inc.*, 75 F.3d 290 (7th Cir. 1996) (citations omitted). To be sure, the fact that Mayenschein now asserts in her most recent declaration that she complained about age discrimination is inconsistent with her deposition testimony where she did not mention these statements. But this is not the kind of contradiction that warrants application of the sham affidavit rule. The rule is only applied in circumstances where the contradiction between the earlier sworn testimony and the latter is clear and unmistakable. *Knauf Realty, LLC v. Prudential Real Estate Affiliates, Inc.*, 486 F. Supp. 2d 855, 857 (W.D. Wis. 2007) ("[T]he sham affidavit rule is limited to blatant contradictions, not elaborations or ambiguous testimony that the other party failed to clarify during a deposition."). Accordingly, the court will not strike Mayenschein's statements in her declaration evincing that she engaged in protected activity on November 7, 2013.

13

Nevertheless, even if Mayenschein did engage in protected activity, she has not presented sufficient evidence that Bishara's decision to eliminate her position was motivated by her protected expression. To establish a causal connection between her allegedly protected conduct and her termination, Mayenschein must show that "her complaints were 'a substantial or motivating factor'" in Bishara's decision to fire her. *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668 (7th Cir. 2011) (citing *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008)). Mayenschein's reliance on her conversation with Bishara to establish a causal connection is flawed because he already decided to eliminate her position before the November 7, 2013 meeting occurred. "When a retaliation claim is based on suspicious timing, 'the order of events is even more important than the time between them; the theory doesn't work if the retaliatory act precedes the protected activity.'" *Leitgen*, 630 F.3d at 676 (quoting *Leonard v. E. Ill. Univ.*, 606 F.3d 428, 432 (7th Cir. 2010)). The record demonstrates that Bishara elected to eliminate Mayenschein's position on November 6, 2013. (SMF ¶ 23.) Because the retaliatory act precedes Mayenschein's protected activity, her retaliation claim under the ADEA fails as a matter of law.

## CONCLUSION

For the reasons set forth above, WSPG's motion for summary judgment (ECF No. 36) is **GRANTED**. The Clerk is directed to enter judgment in favor of WSPG, dismissing the action with prejudice and awarding WSPG $10,184 in actual attorneys fees and costs previously awarded (ECF No. 33), along with statutory costs to be assessed by the Clerk.

**SO ORDERED** this  29th  day of November, 2016.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

14